E-FILED
Thursday, 02 June, 2022  03:41:46 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ONTARIO ALEXANDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 21-cv-1333-MMM |
| | ) | |
| BRIAN ASBELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MERIT REVIEW ORDER**

Plaintiff, proceeding *pro se* and currently incarcerated at the Menard Correctional Center, files a Complaint under 42 U.S.C. § 1983 based on alleged constitutional violations that occurred while he was detained at the Peoria County Jail ("Jail") in 2021.

This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**FACTS**

Plaintiff files suit against Defendants Lieutenant A. Eddlemon, Correctional Officer R. Owens, Correctional Officer H. Morrison, Superintendent Ronda Guyton, Sheriff Brian Asbell, and Chief Deputy Joseph Needham.

1

**May 16, 2021**

Between 12:00 a.m. and 2:30 a.m. on May 16, 2021, Plaintiff was receiving new laundry on H-pod, housing H-1 in exchange for old laundry when he was involved in a verbal altercation with Defendant Eddlemon.

Plaintiff then returned to cell #14, and as he was putting away his laundry, Defendant Eddlemon, along with Defendants Owens and Morrison, allegedly rushed into his cell. Plaintiff claims that Owens and Morrison cornered him, while Eddlemon directed Plaintiff to pack his belongings to go to H-3 (segregation). When Plaintiff refused, Eddlemon allegedly aimed pepper spray at Plaintiff's face and threatened to spray him.

Plaintiff then started shifting his body to the right and left while using Owens as a shield and told Eddlemon, "your [sic] going to mace your fellow co-worker, so spray me if you want." (Doc. 1 at 14). Plaintiff alleges that Eddlemon said he was going to mace Plaintiff on the count of five, but he maced him on three.

Defendants Owens and Morrison grabbed Plaintiff's arms, and Plaintiff knelt to the ground because he could not see. Plaintiff made fun of Eddlemon because he was coughing and "called him a weak b***h." *Id.* At that point, Plaintiff alleges that Eddlemon took his arm from Owens, pulled it all the way up Plaintiff's back, twisted it, and then bent it.

Plaintiff was then shackled to a loop on a wall in the transfer cell and taken to segregation after Lieutenant Hoffman removed the mace. Plaintiff does not state who shackled him the wall.

**July 6, 2021**

At approximately 4:30 a.m. on July 6, 2021, Plaintiff alleges that he was asleep in cell #5 when Eddlemon and an unknown officer came to the door. Plaintiff claims that Eddlemon

informed him that he had to move to a different cell because another detainee needed it. Plaintiff refused to move until Lieutenant Hart told him to pack him belongings.

The next day, Plaintiff alleges that he received a false disciplinary ticket from Eddlemon, alleging assault and battery claims and that Plaintiff had cursed at staff members.

Later that day, the detainee who was placed in cell #5 had to be moved because he had a back problem. As a result, Plaintiff claims that he switched cells again and spent an additional seven days in disciplinary segregation.

Plaintiff states that he asked Defendant Guyton "to put A. Eddlemon as my keep away, and her response was a solid 'no.'" *Id.* at 16.

**September 22, 2021**

On September 22, 2021, Plaintiff alleges that he was on pod H-3 when detainee Joshua Snyder opened the chuckhole on Plaintiff's cell door and spit on him. When Snyder attempted to spit on him again, Plaintiff used a bottle to squirt urine on Snyder.

When Snyder told officers what happened, a "great number of officers came, but A. Eddlemon was frontline." *Id.* Plaintiff claims that he tried to explain to the officers what happened, but they did not listen.

Plaintiff was placed in handcuffs to be taken to a special cell in the main hallway of the male pods. Eddlemon and Cory looped their arms threw Plaintiff's arms, and as they were walking down the stairs of H-3, Plaintiff alleges that Eddlemon pinched Plaintiff's biceps.

**October 31, 2021**

On October 31, 2021, Plaintiff alleges that Officer B. Garcia, who is not named as a Defendant, came to get him when Plaintiff was released from suicide watch. Plaintiff asked Garcia to give him his jumpsuit so he could get dressed, but Garcia replied that Eddlemon had said

3

Plaintiff needed to get dressed after he returned to his cell. Plaintiff alleges that he was naked and embarrassed as he walked by female staff members on the way to his cell.

**Defendants Guyton, Asbell, and Needham**

Plaintiff sues Defendant Guyton in her individual and official capacities. He alleges that she failed to protect him and ignored him after he wrote grievances and requested copies of tickets.

Plaintiff sues Defendants Asbell and Needham in their official capacities and claims that they failed to protect him and "never do walk rounds to see how the conduct is inside on both inmate and officers side." *Id.* at 17.

### ANALYSIS

As Plaintiff was a pretrial detainee at the time of the alleged events, his claims arise under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020).

The Court finds that Plaintiff has stated a colorable excessive force claim against Eddlemon based on the allegations that he pepper-sprayed Plaintiff and then pulled Plaintiff's arm all the way up his back, twisted it, and then bent it on May 16, 2021. To state an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. "[O]bjective reasonableness turns on the facts and circumstances of each particular case." *Id*. at 397; *see also Mays*, 974 F.3d at 819.

The Court also finds that Plaintiff has stated a plausible claim based on Owens' and Morrison's failure to intervene when Eddlemon pepper sprayed Plaintiff and pulled, twisted, and bent Plaintiff's arm. A failure to intervene claim requires evidence of the following: (i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to

4

prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered harm as a result. *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994); *Medley v. Turner*, 869 F.Supp. 567, 572 (N.D. Ill. Nov. 10, 1994) (pretrial detainee's claim against police officer who fails to intervene to prevent fellow officer's use of excessive force arises under the Fourteenth Amendment, which imposes a duty to protect pretrial detainees).

Plaintiff's complaint also includes allegations related to separate events occurring on July 6, 2021, September 22, 2021, and October 31, 2021, which do not arise from the same transaction or series of related transactions as the events on May 16, 2021. Unrelated claims against the same Defendant may be joined in one action, but different defendants can be joined in one action only if the claims against them arise from the same series of transactions or occurrences. Fed. R. Civ. P. 18, 20; *Kadamovas v. Stevens*, 706 F.3d 843 (7th Cir. 2013) (court "can require the plaintiff 'to file separate complaints, each confined to one group of injuries and defendants'") (quoted cite omitted); *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot. Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions."); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits . . ."). Plaintiff's remaining unrelated claims are DISMISSED, without prejudice. Plaintiff may file separate complaints related these claims.

Plaintiff's allegation that Defendant Guyton failed to protect him and ignored him after he wrote grievances and requested copies of tickets is too vague to allow a plausible inference of a constitutional violation and fails to put Guyton on notice of any claim. The Seventh Circuit has consistently noted that "the essential function of a complaint under the civil rules...is to put the

5

defendant on notice of the plaintiff's claim." *Ross Brothers Const. Co., Inc, v. International Steel Services, Inc.*, 283 F.3d 867, 872 (7th Cir. 2002) (quoting *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001)). Defendant Guyton is DISMISSED, without prejudice.

Plaintiff sues Defendants Asbell and Needham in their official capacities, alleging that they failed to protect him and "never do walk rounds to see how the conduct is inside on both inmate and officers side." (Doc. 1 at 17). Section 1983 does not allow actions against individuals merely for their supervisory role of others. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). If officials are named, they must be named in their individual capacities, and Plaintiff must allege that the officials personally participated in the deprivation or were deliberately reckless as to the misconduct of subordinates or were aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Plaintiff has made no showing that Asbell and Needham were personally involved or had knowledge of the alleged constitutional violations. *See Palmer*, 327 F.3d at 594. Defendants Asbell and Needham are DISMISSED, without prejudice.

Finally, the Court notes that Plaintiff indicates he submitted a grievance, and there was no result. (Doc. 1 at 9). Plaintiff states: "I didn't appeal the grievance, and the process was completed." *Id.* It is recognized that the failure to exhaust is "an affirmative defense that ordinarily should be raised—and must be proven—by the defendant. A district court may dismiss a complaint where 'the existence of a valid affirmative defense, such as the failure to exhaust, is so plain from the face of the complaint that the suit can be regarded as frivolous…But the defense must be unmistakable….'" *Boyce v. Illinois Dep't of Corr.*, 661 F. App'x 441, 443 (7th Cir. 2016) (internal citations omitted). Plaintiff must complete the grievance process before filing a lawsuit. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); *Kincaid v. Sangamon Cnty.*, 435 F. App'x 533, 536-

37 (7th Cir. 2011) (recognizing that the § 1997e(a) exhaustion requirement applies to jail as well as prison grievance procedures). On the face of the Complaint, it is unclear if Plaintiff failed to exhaust his administrative remedies by not appealing the grievance. Out of an abundance of caution, he will be allowed to proceed on his Complaint.

**IT IS THEREFORE ORDERED:**

1)      Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states an excessive force claim against Defendant Eddlemon and a failure to intervene claim against Defendants Owens and Morrison. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2)      Defendants Sheriff Brian Asbell, Joseph Needham, and Ronda Guyton are DISMISSED, without prejudice. The Clerk is directed to terminate them as parties.

3)      Plaintiff's Motion to Request Counsel [12] is DENIED. The Court does not possess the authority to require an attorney to accept pro bono appointments on civil cases such as this. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). The most that the Court can do is ask for volunteer counsel. *Jackson v. Cnty. of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that it is a fundamental premise that indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court). In determining whether the Court should attempt to find an attorney to voluntarily take a case, the question is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial. *Pruitt*, 503 F.3d at 655. This is an individualized inquiry based upon the record as a whole, the nature of the claims, and the plaintiff's ability to pursue his claims through all phases

of the case, including discovery and trial. *Navejar v. Iyioloa*, 718 F.3d 692, 696 (7th Cir. 2013). Here, Plaintiff indicates that he has completed some high school education. His claims are not complex and involve issues of which he has direct, personal knowledge. Plaintiff attaches one letter from an attorney who declined representation. If Plaintiff renews his motion for appointment of counsel, he is directed to provide copies of additional letters he received from prospective counsel or indicate whether they responded. *See Machicote v. Roethlisberger*, 969 F.3d 822, 826, 828-29 (7th Cir. 2020).

4) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5) The Court will attempt service on Defendants by mailing a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed an Answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

6) If Defendants no longer works at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7)      Defendants shall file an Answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an Answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an Answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

8)      This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9)      Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition. Plaintiff shall be provided a copy of all pertinent medical records upon request.

10)     Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11)     If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

12)     Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13)     The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED:  6/2/2022

                                        s/ Michael M. Mihm
                                        Michael M. Mihm
                                        United States District Judge